**John M. Schultz**, **Attorney of Record**
(NM No. 153215; Federal Bar No. 20 – 132)
**BUCHALTER, A Professional Corporation**
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101
Email:  jschultz@buchalter.com
Tel: (503) 329-2051; F (503) 226-0079

**Roger L. Scott**
(CA No. 247165)
**BUCHALTER, A Professional Corporation**
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Email:  rscott@buchalter.com
Tel:  (949) 760-1121; Fax:  (949) 720-0182


Attorneys for Plaintiffs Brant Griffin and Randi Mondello

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

## ALBUQUERQUE DIVISION

| | |
|---|---|
| **BRANT GRIFFIN, a resident of Nevada; RANDI MONDELLO, a resident of California,**<br><br>                  Plaintiffs,<br><br>    v.<br><br>**ERLEND OLSON**, a resident of New Mexico,<br><br>             Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1.  **FRAUD – MATERIAL MISREPRESENTATION**<br>2.  **FRAUD – MATERIAL OMISSIONS AND CONCEALMENT OF MATERIAL FACTS**<br>3.  **BREACH OF ORAL CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

1

**COMPLAINT**
BN 84093861v6

1.      Plaintiffs Brant Griffin and Randi Mondello bring this action to recover the millions of dollars owed to them by Defendant Erlend Olson.  In 2020 and 2021, Olson induced Griffin and Mondello to invest in Theia Group, Incorporated, and related entities.  Olson touted his experience as a former NASA engineer, his record of accomplishment as a successful businessman, and his alleged access to *billions* in investments to support Theia Group's business of launching a satellite network to provide specialized imaging of the Earth.  Olson promised that the investments made in Theia Group were secured by valuable Federal Communications Commission bandwidth.  Moreover, Olson *personally guaranteed* the investments.  Based on Olson's representations, Griffin and Mondello loaned Theia Group $2,600,000 through secured promissory notes, for which they were supposed to be repaid $15,900,000 when their notes matured.

2.      In mid-2021 when Griffin's and Mondello's notes, and the notes of others, became due, Theia Group collapsed.  Only then did Griffin and Mondello discover that many of Olson's representations were false.  Olson and Theia Group had been under investigation by the United States Department of Justice for years, and Theia Group did not have the available funding Olson had claimed.  Larger investors seized all of Theia Group's assets, and Olson refused to honor his personal guarantee and repay Griffin and Mondello.

3.      Today, Griffin has yet to be repaid his $2,050,000 investment, let alone the $13,750,000 repayment amount he is owed.  Similarly, Mondello has yet to be repaid her $550,000 investment, let alone the $2,150,000 repayment amount she is owed.  Olson personally owes Griffin and Mondello these amounts.

**COMPLAINT**

## JURISDICTION AND VENUE

4.      This is an action for fraud and breach of oral contract.  This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because there is complete diversity between Plaintiffs, Brant Griffin and Randi Mondello, and the Defendant, Erlend Olson, and the amount in controversy, without interests and costs, exceeds $75,000.

5.      Brant Griffin is an individual residing in Las Vegas, Nevada.

6.      Randi Mondello is an individual residing in Huntington Beach, California.

7.      Erlend Olson is an individual residing in Albuquerque, New Mexico.

8.      This Court has personal jurisdiction over Olson because he is present, doing business and/or residing in this District, he has committed tortious acts and violated Griffin and Mondello's rights in this District, and he knew or should have known that such conduct would cause injury to Griffin and Mondello in the State of New Mexico.

9.      Venue is proper in the United States District Court for the District of New Mexico under 28 U.S.C. §§ 1391(b) and 1391(c).

## GENERAL ALLEGATIONS

### Olson Induces Griffin and Mondello to Invest in Theia Group

10.      Olson and Mondello bring this action because they have been directly harmed by Olson's wrongful conduct alleged herein.

11.      On information and belief, Olson is a former NASA and JPL engineer and serial entrepreneur.  The highlight of Olson's career appears to be a venture-capital backed semiconductor company that sold to the semiconductor giant Broadcom for $605 million.

12.      While Olson may have had some success in the semi-conductor industry, at least one of his ventures outside that industry failed spectacularly.  Olson was previously been the

**COMPLAINT**

3

founder and CEO of Terralliance Technologies, which Forbes described as "one of the largest start-up busts in history," with Olson "spend[ing] Terralliance's money as if investors' money was a never ending gusher of green…" The article reported that Olson "was demoted to 'chief scientist' to get him out of management and cut off his global spending spree."[1] CNN reported that Terralliance's began to run out of cash "despite having raised nearly $300 million" and that Olson was "unapologetic about the outlays."[2] The law firm Pillsbury Winthrop wrote that its client who sued "[found] out that Erlend Olson, a charismatic former NASA engineer, had wired himself substantial amounts of company money without documenting any business justification. Olson had also reimbursed himself for family vacations, for visits to gentlemen's clubs, and for tens of thousands of dollars in jewelry purchases."[3] Unfortunately, Olson's Terralliance failure was doomed to repeat itself.

13.     In or about September 2015, Olson helped co-found Theia Group. Theia's goal was to build, launch, and put into orbit a satellite network with the ability to image the earth in extraordinary detail, through obstructions that can block satellite imaging based on other technologies, and even detect the composition of "nearly everything on earth."

14.     On information and belief, Theia Group's primary asset was a license from the Federal Communications Commission granted in May 2019. The license gave Theia Group the right to build a network of 112 satellites. The license was conditioned upon Theia Group building and launching 56 satellites into their assigned orbit, and operating the satellites, by May 9, 2025.

---

[1] https://www.forbes.com/sites/jayadkisson/2018/05/12/bankruptcy-trustees-compromise-with-offshore-trust-fails-to-win-court-approval-in-olson/
[2] https://money.cnn.com/2010/03/26/news/companies/terralliance_tech_full.fortune/index.htm#full
[3] https://www.pillsburylaw.com/a/web/396/LitHighlights2012-011613.pdf at 13.

**COMPLAINT**

15.     In late 2019, Olson began approaching "friends and family" to invest in Theia Group.  Among those "friends and family" was Olson's former fiancée, Mondello.  At the time, Mondello and Griffin were in a personal relationship, and Mondello shared Olson's offering materials with Griffin.

16.     Griffin was impressed by the materials Olson provided.  Olson's resume claimed that he had been involved in four different startups, each of which "were all successfully sold for significant returns for their investors."  The highlight of these was a company Mr. Olson founded that had sold to Broadcom.

17.     When asked about the failure of Terralliance, Olson claimed that, although he founded the company, its failure was the fault of others.  Olson failed to disclose that he had taken money from Terralliance to fund personal expenses.

18.     Olson promised significant returns on investment, promising to double Griffin and Mondello's money within six months.

19.     Critical to the success of Olson's pitch, in late December 2019 or early January 2020, Olson orally promised Griffin and Mondello the he personally would guarantee any investment Griffin and Mondello made in Theia Group in exchange for Griffin and Mondello making those investments (the "Personal Guarantee").

20.     Based on Olson's representations, Griffin and Mondello agreed to invest in Theia Group.

21.     On or about January 10, 2020, Griffin entered into a Secured Note Purchase Agreement and Secured Convertible Promissory Note with Theia Group (the "Griffin January 10, 2020 Note").  Pursuant to the Griffin January 10, 2020 Note, Griffin agreed to loan $550,000

**COMPLAINT**

to Theia Group. In exchange, Theia Group promised to repay Griffin *twice* his investment, or $1,100,000 no later than July 10, 2020.

22.     On or about January 10, 2020, Mondello entered into a Secured Note Purchase Agreement and Secured Convertible Promissory Note with Theia Group (the "Mondello January 10, 2020 Note"). Pursuant to the Mondello January 10, 2020 Note, Mondello agreed to loan $200,000 to Theia Group. In exchange, Theia Group promised to repay Mondello *twice* her investment, or $400,000 no later than July 10, 2020.

23.     In early summer 2020, Olson again reached out to Griffin and Mondello asking them to invest in Theia Group.

24.     On or about June 15, 2020, Griffin entered into another Secured Note Purchase Agreement and Secured Convertible Promissory Note with Theia Group (the "Griffin June 15, 2020 Note"). Pursuant to the Griffin June 15, 2020 Note, Griffin agreed to loan $350,000 to Theia Group. In exchange, Theia Group promised to repay Griffin *twice* his investment, or $700,000 no later than December 15, 2020.

25.     On or about July 10, 2020, Mondello entered into a Secured Note Purchase Agreement and Secured Convertible Promissory Note with Theia Group (the "Mondello July 10, 2020 Note"). Pursuant to the Mondello July 10, 2020 Note, Mondello agreed to loan $50,000 to Theia Group. In exchange, Theia Group promised to repay Mondello *twice* her investment, or $100,000 no later than July 10, 2021.

26.     Shortly after the July 10, 2020 maturity date of the January 10, 2020 Notes, Olson informed Griffin and Mondello that Theia Group needed to delay repayment of the Griffin January 10, 2020 Note and the Mondello January 10, 2020 Note. To induce Griffin and Mondello to amend the January 10, 2020 Notes and extend the maturity date, Olson promised to

6

increase the repayment amount to *four times* their initial investment. But, Olson did not provide any amendment or other documentation, and simply asked Griffin and Mondello to be patient, promising that their investments would be repaid with the additional maturity amounts.

27. On or about October 23, 2020, Griffin, through a retirement investment, entered into another Secured Note Purchase Agreement and Secured Convertible Promissory Note with Theia Group (the "Griffin June 15, 2020 Note"). Pursuant to the Griffin June 15, 2020 Note, Griffin agreed to loan $200,000 to Theia Group. In exchange, Theia Group promised to repay Griffin *twice* his investment, or $400,000 no later than December 15, 2020.

**Olson Induces Forbearance and Further Investment; Hides that Theia is Under Investigation by the United States Department of Justice**

28. In early December 2020, Griffin and his father visited Olson in person at Theia Group's offices in Washington, D.C. During the meeting, Olson assured Griffin that his investments were safe and would be repaid. Olson told Griffin that Theia Group had received *six billion* dollars ($6,000,000,000) in investments from foreign governments. To prove this, Olson showed Griffin what Olson claimed was—and appeared to be—a bank statement with a balance in excess of $6,000,000,000. Griffin asked Olson if he could have a copy of the bank statement, but Olson told him he could not for "confidentiality" reasons.

29. During the meeting, and based on the claimed $6,000,000,000 in funding, Olson (i) asked that Griffin make additional investments in Theia Group, and (ii) agree to execute, and have Mondello execute, documents formally extending the repayment date for the July 10, 2020 Notes to January 10, 2021.[4]

---

[4] Olson also asked Griffin's father, H. Lee Griffin, to invest in Theia Group. The elder Mr. Griffin agreed to do so, loaning $1,000,000 to Theia Group in exchange for a promised repayment of $2,250,000. To date, Mr. Griffin has not been repaid.

7

30.     Based on Olson's representations, including the claimed $6,000,000,000 bank balance, Griffin agreed.

31.     On or about December 4, 2020, Griffin entered into another Secured Note Purchase Agreement and Secured Convertible Promissory Note with Theia Group (the "Griffin December 4, 2020 Note"). Pursuant to the Griffin December 4, 2020 Note, Griffin agreed to loan $700,000 to Theia Group. In exchange, Theia Group promised to repay Griffin *two and a quarter times* his investment, or $1,575,000 no later than June 4, 2021.

32.     Further, on or about December 4, 2020, Theia Group provided Griffin with Amendment No. 1 to the Griffin January 10, 2020 Note, with an effective date backdated to July 10, 2020-the original date of maturity. The amendment extended the maturity date of the notes to January 10, 2021, and increased the repayment amount to *four times* the amount of the initial investment. Thus, the repayment amount for the Griffin January 10, 2020 Note was increased to $4,400,000.

33.     Similarly, on or about December 4, 2020, Theia Group provided Mondello with Amendment No. 1 to the Mondello January 10, 2020 Note, with an effective date backdated to July 10, 2020-the original date of maturity. The amendment extended the maturity date of the notes to January 10, 2021, and increased the repayment amount to *four times* the amount of the initial investment. Thus, the repayment amount for the Griffin January 10, 2020 Note was increased to $800,000.

34.     With the new maturity date only a month away, Olson acknowledged to Griffin and Mondello that Theia Group would not be able to meet the new deadline. As a result, at the same time Griffin and Mondello executed the backdated Amendment No. 1 to each of their January 10, 2020 Notes, they were each presented with Amendment No. 2 to those notes. To

induce Griffin and Mondello to amend the January 10, 2020 Notes and extend the maturity date even further, Olson promised to once again *double* the repayment amount of the amended notes, yielding a repayment amount of *eight times* their initial investment.

35. On or about December 4, 2020, Griffin executed Amendment No. 2 to the Griffin January 10, 2020 Note, with an effective date backdated to November 2, 2020. The amendment extended the maturity date of the note to July 10, 2021, and increased the repayment amount to *eight times* the amount of the initial investment. Thus, the repayment amount for the Griffin January 10, 2020 Note was increased to $8,800,000.

36. Similarly, on or about December 4, 2020, Mondello executed Amendment No. 2 to the Mondello January 10, 2020 Note, with an effective date backdated to November 2, 2020. The amendment extended the maturity date of the note to July 10, 2021, and increased the repayment amount to *eight times* the amount of the initial investment. Thus, the repayment amount for the Mondello January 10, 2020 Note was increased to $1,600,000.

37. On information and belief, in or about late 2020 or early 2021, the United States Department of Justice ("DOJ") began an investigation into Olson and Theia Group, and notified Olson of that investigation, including serving subpoenas on Olson and Theia Group.

38. On information and belief, the DOJ investigation was not public and would not have been known to, or discoverable by, Griffin and Mondello.

39. Olson informed Griffin, Mondello, and other investors that he and Theia Group had been contacted by the DOJ, but claimed it related to his failed Terralliance business and not Theia Group.

40. In the spring of 2021, Olson again asked Griffin and Mondello to invest in Theia Group. This time, Olson pitched investment in one of Theia Group's related entities (or possibly

simply a fictitious business name), Cypherian. Investment materials Olson provided to Griffin and Mondello claimed "Cypherian is re-producing the terrestrial internet and cloud *entirely in space*..."

41.     On or about April 29, 2021, Griffin entered into another Secured Note Purchase Agreement and Secured Convertible Promissory Note with Theia Group (the "Griffin April 29, 2021 Note"), ostensibly to invest in Cypherian. Pursuant to the Griffin April 29, 2021 Note, Griffin agreed to loan $250,000 to Theia Group. In exchange, Theia Group promised to repay Griffin *one and a half times* his investment, or $375,000 no later than April 29, 2022.

42.     On or about April 29, 2021, Mondello entered into another Secured Note Purchase Agreement and Secured Convertible Promissory Note with Theia Group (the "Mondello April 29, 2021 Note"), ostensibly to invest in Cypherian. Pursuant to the Mondello April 29, 2021 Note, Mondello agreed to loan $100,000 to Theia Group. In exchange, Theia Group promised to repay Mondello *one and a half times* her investment, or $150,000 no later than April 29, 2022.

43.     Shortly thereafter, Griffin and Mondello began to hear rumors that Theia Group was unable to pay its debts and, most concerning, that Theia Group's largest creditor had sent Theia Group a notice of default on $200,000,000 in loans.

44.     On or about June 30, 2021, concerned with the rumors, and with certain of his notes becoming due and others past due, Griffin wrote Olson and asked to redeem his initial investments in the Griffin January 10, 2020 Note and Griffin June 15, 2020 Note. At the time, Griffin did not ask for the entire repayment amount owed, but only asked that his initial investment of $900,000 ($550,000 for the January 10, 2020 Note and $350,000 for the June 15, 2020 Note) be repaid.

**COMPLAINT**

45.     Similarly, on or about July 4, 2021, Mondello wrote Olson and asked to redeem her initial investments.  Mondello had invested the principal sum of $550,000 across the Mondello January 10, 2020 Note, the Mondello July 10, 2020 Note, the Mondello December 4, 2020 Note, and the Mondello April 29, 2021 Note.  At the time, Mondello did not ask for the entire repayment amount owed, but only asked that her initial investment of $550,000 be repaid.

46.     Despite these demands, Theia Group failed to pay Griffin or Mondello.

### Theia Group's Largest Creditor Sues; a Receiver is Appointed Over Theia Group's Assets

47.     On August 19, 2021, Theia Group's largest creditor, Brevet Capital Management, LLC sued Theia Group through Brevet's affiliate FCS Advisors, LLC.  *FCS Advisors, LLC v. Theia Group, Inc., et al*, United States District Court for the District of New York Case No. 21-cv-06995-PKC ("Brevet Action").  The Complaint sought to recover over $289,000,000 and told a story familiar to Griffin and Mondello, but on a much larger scale.  Brevet agreed to invest in Theia Group based on its FCC license and plan to launch a system of satellites.  Brevet invested through loans in exchange for promissory notes.  When Theia Group could not repay Brevet, Theia Group told Brevet that it had access to *billions* in investments from foreign nations.  Brevet agreed to refinance and extend the maturity date for its notes through amendments.  Brevet's notes, as amended, were due on June 29, 2021.  But, Theia Group did not pay.  *See, generally*, Brevet Action, Dkt. 1.

48.     Brevet asked the Court to appoint a receiver over Theia Group and its assets and, on October 29, 2021, the Court granted Brevet's application for the appointment of a receiver.  Brevet Action Dkt. 105.

**COMPLAINT**

49.    The Court's order appointing a receiver laid bare Theia Group's inability to repay its creditors:

> Theia's finances appear to be quickly worsening.  At the October 20, 2021 hearing on the application for the appointment of a receiver, counsel for Theia stated: "***There is no company today.  There's no money being spent in any meaningful way. . . . All there really is, is a license and a business plan***." (Transcript of Oct. 20, 2021 Hearing at 29.)  Theia's counsel also stated: "we believe ***the only path for anybody getting their money back is to sell this license***, and sale of this license will inevitably require some type of bankruptcy proceeding." (<u>Id.</u> at 28.)

Brevet Action, Dkt. 105 at 2.

### Olson Acknowledges His Personal Guarantee, but Fails To Repay Griffin and Mondello

50.    Griffin and Mondello hoped that the receivership might yield some way to repay their loans.  But, as the Brevet lawsuit dragged on, it became clear that they were extremely tiny creditors, and that much larger creditors, including Brevet and others, would absorb any revenue generated from a sale of Theia Group's assets.

51.    Two years into the Brevet Action, Griffin and Mondello had still not been repaid.

52.    On December 9, 2023, Olson wrote Griffin, Mondello, and others and admitted that the DOJ had begun to investigate him as early as late 2020 or early 2021, stating "the DOJ served its warrants on me and my home and Theia coming up on 3 years ago."

53.    Griffin and Mondello were shocked:  Had they known the DOJ was investigating Theia Group and Olson, they would have ceased making any investments in Theia Group, including the amendments to their 2020 investments and additional 2021 investments.

**COMPLAINT**

54.     Also in his December 9, 2023 email, Olson confirmed his Personal Guarantee, stating:

"As many of you also know, I guaranteed essentially the entire debt of the company - to a few only verbally but almost all of the debt and investment in writing. I am qualified to do that since (as evidenced by the Asset Purchase Agreement), it is essentially my work product (in some cases sole work product) which is being sold for a very large sum of money, which is covering not only Brevet, but will cover [friends and family] etc. But that doesn't make it easy anyway."

and

"Obviously it makes no sense to guarantee the entire loans of the company, but then keep some loan proceeds nonetheless. My guarantee was not 'everything but whatever I feel like keeping for myself'. It was everything. So it shall be."

and

"…I am still on the hook to make everyone whole regardless, which I will do and have a plan to do."

55.     On or about June 25, 2024 Griffin and Mondello, through counsel, demanded that Olson repay them according to the terms of the Personal Guarantee.

56.     To date, Olson has failed or refused to repay Griffin or Mondello.

# FIRST CLAIM FOR RELIEF

## (Fraud – Material Misrepresentation)

57.     Olson and Mondello incorporate by reference the allegations in paragraphs 1-56 above as through fully set forth herein.

58.     In or about January 2020, Olson represented to Griffin and Mondello that Olson would personally guarantee any investments Griffin and Mondello made in Theia Group.

59.     In or about December 2020, Olson represented to Griffin that Theia Group had received funding in the amount of at least $6,000,000,000, and showed Griffin a bank statement with a balance of at least $6,000,000.

60.     On information and belief, at the time Olson made these representations, he knew them to be false.

61.     On information and belief, Olson intended that Griffin and Mondello rely on his representations and knew that, absent these representations, Griffin and Mondello would not make investments in Theia Group.

62.     Griffin and Mondello reasonably relied on Olson's representations including by making initial investments in Theia Group, amending their investment agreements to extend the repayment date, and making further investments in Theia Group.

63.     Geriffin and Mondello were harmed as a result of their reasonable reliance on Olson's representations in an amount exceeding $75,000 to be proven at trial.

64.     Olson's conduct, as alleged herein, was fraudulent, malicious, oppressive, and was done in wanton disregard for Griffin and Mondello's rights and with an intent to harm Griffin and Mondello.  Griffin and Mondello should, therefore, be awarded exemplary and

**COMPLAINT**
BN 84093861v6

punitive damages against Olson in an amount to be established that is appropriate to punish Olson and deter others from engaging in such conduct in the future.

## SECOND CLAIM FOR RELIEF

### (Fraud – Material Omissions and Concealment of Material Facts)

65. Olson and Mondello incorporate by reference the allegations in paragraphs 1-64 above as through fully set forth herein.

66. Olson owed a duty to disclose material facts to Griffin and Mondello by virtue of their business relationship, including Griffin and Mondello's investment in Theia Group, of which Olson was an officer and Olson's Personal Guarantee of Griffin and Mondello's investments.

67. Olson disclosed portions of relevant material facts related to the failure of Terralliance, while blaming others. Olson failed to disclose other relevant material facts—such as his personal use of Terralliance funds reportedly used for trips to gentlemen's clubs and other non-business activities—that materially qualified the facts disclosed and rendered the disclosure likely to mislead.

68. Olson failed to disclose to Griffin and Mondello the material fact that the DOJ had been investigating Theia Group and Olson since at least late 2020 or early 2021.

69. Griffin and Mondello did not know that Olson concealed these material facts from them.

70. By failing to disclose these material facts, Olson intended to deceive Griffin and Mondello.

**COMPLAINT**

71.     Had the omitted material facts been disclosed, Griffin and Mondello would have behaved differently including, but not limited to, not amending their investment agreements with Theia Group to extend the repayment date, and not making further investments in Theia Group.

72.     Olson's material omissions, concealments, and failures to disclose were a substantial factor in causing Griffin and Mondello harm.

73.     Griffin and Mondello were harmed in an amount exceeding $75,000 to be proven at trial.

74.     Olson's conduct, as alleged herein, was fraudulent, malicious, oppressive, and was done in wanton disregard for Griffin and Mondello's rights and with an intent to harm Griffin and Mondello.  Griffin and Mondello should, therefore, be awarded exemplary and punitive damages against Olson in an amount to be established that is appropriate to punish Olson and deter others from engaging in such conduct in the future.

## THIRD CLAIM FOR RELIEF

### (Breach of Oral Contract)

75.     Olson and Mondello incorporate by reference the allegations in paragraphs 1-74 above as through fully set forth herein.

76.     In or about early January 2020, Griffin and Mondello on the one hand and Olson on the other hand entered into an oral agreement under which, in exchange for Griffin and Mondello agreeing to invest in Theia Group, Olson promised to personally guarantee any such investment Griffin and Mondello made (the "Personal Guarantee").

77.     Griffin and Mondello have performed all covenants, conditions, and promises required on their part under the Personal Guarantee.

78.     Olson breached, and continues to breach, his obligations under the Personal Guarantee by failing to repay Griffin and Mondello their investments made in Theia Group.

79.     As a result of Olson's breach, Griffin and Mondello have been damaged in the sum of at least $75,000 to be proven at trial.

## PRAYER

**WHEREFORE**, Griffin and Mondello pray for Judgment as follows:

### On the First Claim for Relief

1.      For damages in an amount according to proof at trial, plus pre- and post-judgment interest at the statutory rate; and

2.      For an award of punitive damages in an amount appropriate to punish or set an example of Olson.

### On the Second Claim for Relief

3.      For damages in an amount according to proof at trial, plus pre- and post-judgment interest at the statutory rate; and

4.      For an award of punitive damages in an amount appropriate to punish or set an example of Olson.

### On the Third Claim for Relief

5.      For damages in an amount according to proof at trial, plus pre- and post-judgment interest at the statutory rate;

### On all claims for relief

6.      For costs of suit incurred herein; and

7.      For such other and further relief as the Court may deem just and proper.

Dated:  September 13, 2024

                                                    **BUCHALTER, APC**



                                        By: _____

                                                    John M. Schultz, NM No. 153215 (2020);
                                                    Federal Bar No. 20-132

**COMPLAINT**

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Brant Griffin
Randi Mondello

**DEFENDANTS**
Erlend Olson

**(b)** County of Residence of First Listed Plaintiff    Clark County, NV
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Bernalillo County NM
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
See Attachment 1 to this Civil Cover Sheet

Attorneys *(If Known)*    Nicholas Sitterly
Nicholas Sitterly Law Firm, LLC
500 Marquette Avenue Northwest, Suite 1200
Albuquerque, New Mexico 87102
(505) 314-1318/ Nick.sitterlylawfirm@gmail.com

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | | ☐ 485 Telephone Consumer |
| ☒ 190 Other Contract | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | Relations | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 290 All Other Real Property | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. § 1332(a)(1): Citizens of different states (Plaintiffs are residents of Nevada & California; Defendant is a resident of New Mexico)
Brief description of cause:
See Attachment 2 to this Civil Cover Sheet

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
$15,900,000

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
September 13, 2024

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**Plaintiffs' Attachment 1 to Civil Cover Sheet**
**Brant Griffin and Randi Modello, Plaintiffs v. Erlend Olson, Defendant**

**Section 1(c) Plaintiffs' Attorneys:**

John M. Schultz (Attorney of Record) (NM Bar No. 153215; NM Federal Bar No. 20 – 132)
(Appearance by the e-filing of this Complaint)
Buchalter, A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101
P: 503-329-2051
E: jschultz@buchalter.com

Roger L. Scott (CA Bar No. 247165)
(Appearance by pending *pro hac vice* motion and association with co-counsel John M. Schultz)
Buchalter, A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
P: (949) 760-1121
E: rscott@buchalter.com

**Section VI – Cause of Action - Brief Description of Cause:**

By fraud, misrepresentation, and concealment, Defendant induced Plaintiffs to lend Defendant $2,600,000 in secured promissory notes with a total payback at maturity of $15,900,000; all notes have matured and to date Defendant has failed to pay Plaintiffs the amounts due at maturity. The causes of action in this matter are: (1) Fraud – Material Misrepresentation), (2) Fraud – Material Omissions and Concealment), and (3) Breach of Oral Contract.